651 P.2d 1026

**Susan LANDIN, Plaintiff-Appellant,**

v.

**Tommy M. YATES, Defendant-Appellee.**

**No. 5602.**

Court of Appeals of New Mexico.

Aug. 10, 1982.

Certiorari Denied Sept. 28, 1982.

John Duhigg, Duhigg & Cronin, Albuquerque, for plaintiff-appellant.

Carl J. Butkus, Civerolo, Hansen & Wolf, P. A., Albuquerque, for defendant-appellee.

OPINION

SUTIN, Judge.

Susan Landin sued Tommy M. Yates for damages growing out of an automobile collision. Yates filed a motion for summary judgment, an affidavit, and a release signed by Yates. The release was a printed form. For payment to Yates of $2,575.00, Yates released Current Electric and Susan Landin "of and from all claims, demands, damages, actions or causes of action, on account of injuries to person or damage to property, or both, resulting, or to result ... by reason of an automobile accident near Las Cruces, New Mexico .... It is further understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that payment is not construed as an admission of liability on the part of Current Electric and Susan Landin .... "

Landin filed an affidavit which stated that the release was obtained from Yates by Aetna Life and Casualty Insurance Company, insurer of Current Electric, without her knowledge or consent and was completely unauthorized. A copy of the insurance policy was made part of the record. It authorized Aetna to "investigate and settle any claim or suit as we consider appropriate."

Summary judgment was granted Yates because:

[T]he Release obtained by Aetna did not contain an express reservation of the right of Susan Landin and Current Electric to make a claim against Tommy M. Yates for injuries and damages sustained in the aforesaid collision and that, therefore, said Release constituted an accord and satisfaction of all claims between them arising out of the aforesaid collision, thereby estopping Susan Landin from proceeding against Tommy M. Yates in this cause;

Landin appeals. We reverse.

■ The trial court relied on *Harrison v. Lucero*, 86 N.M. 581, 525 P.2d 941 (Ct.App. 1974). Harrison and Lucero were involved in a motor vehicle collision. Harrison, not his insurer, paid Lucero $300.00, obtained a release and discharge, and then sued Lucero and his employer, Universal Contractors, Inc., for damages. Lucero filed a counterclaim for damages. Harrison alleged as a defense to the counterclaim that any claim of Lucero had been released and discharged by the written release signed by Lucero. *Harrison* held that absent an express reservation of right by Harrison and Lucero to make claims against each other, public policy required that the written release operated as an accord and satisfaction of all claims between them and estopped them from proceeding against each other.

*Harrison* is distinguishable in two important aspects: (1) Harrison, not his insurer, paid Lucero $300.00, obtained a release from Lucero and then each sued the other for damages without a reservation of rights; (2) no claim was made that Harrison's insurer obtained a release from Lucero without the knowledge, consent or authority of Harrison. The *Harrison* rule is not applicable.

The applicable rule is well settled. Where an insurance policy provides that the insurer "may investigate and settle any claim or suit as it deems appropriate," the insurer is not authorized to release the claims of the insured against a third person unless the insured consents to it. An insured should not be bound by an agreement to which he did not assent. *Fikes v. Johnson*, 220 Ark. 448, 248 S.W.2d 362 (1952), 32 A.L.R.2d 934 (1953); *Lohman v. Woodruff*, 224 Kan. 51, 578 P.2d 251 (1978); 1 Long, *The Law of Liability Insurance*, § 5.70 (1981); Annot., *Liability insurer's settlement of claim against insured as bar to insured's tort action against person receiving settlement*, 32 A.L.R.2d 937, and later case service; Keeton, *Liability Insurance and Reciprocal Claims From A Single Accident*, 10 S.W.L.J. 1 (1956).

As Professor Keeton points out:

The purpose of the policy clause granting to the company the privilege of making such settlement as it deems expedient is to give the company control over the handling of the claim *against* the insured. Nowhere in the policy is the reciprocal claim referred to expressly. The error of inferring that the policy grants to the company the privilege of barring the insured's reciprocal claim is apparent when the consequences of such construction are envisioned. [Emphasis by author.] [Id. 6.]

It is unnecessary to set forth the adverse consequences.

Under the *Harrison* rule, an insured who pays a third person in settlement of a claim for damages made by the third person and obtains a release from the third person without a reservation of rights, the insured cannot sue the third person for damages. Under the "consent" rule, an insurer who pays a third person in settlement of a claim for damages against the insured and obtains a release from the third person which does not reserve the rights of the insured to sue the third person for damages, is not effective unless the insured expressly consented to the settlement and release. The "consent" rule is based upon the principle that the policy provision which gives the insurer the privilege of settling a claim against the insured does not include the authority to destroy the rights of the insured against the third person. If it did, then in this fashion, the insurer serves its own interest to the detriment of the insured. Public policy clamors against this intrusion on the rights of an insured.

Another basic reason exists to protect an insured. "When an insurance company acts on behalf of the insured in . . . the settlement of claims, it assumes a fiduciary relationship." *Chavez v. Chenoweth*, 89 N.M. 423, 430, 553 P.2d 703 (Ct.App.1976); 1 Long, *supra*, § 5.37. The fiduciary relationship arises when the solution to an insurance problem is not expressly stated in the policy. If the policy provided that the insurer could effect a settlement absent a reservation of rights and without the con-

sent of an insured, assuming this provision would be valid, the solution to the problem in the instant case exists. In the absence of such a provision, the conduct of the insurer is bound by the fiduciary relationship.

The insurer knows or should know that an insured is ignorant of the effect upon her rights to pursue a claim for damages when a release is obtained by the insurer without the insured's knowledge or consent. The insurer must make a full, fair and prompt disclosure to the insured of all facts which might affect the right and interest of the insured in the settlement. See *Iriart v. Johnson,* 75 N.M. 745, 411 P.2d 226 (1965). The fact that the insurer may settle any claim it deems appropriate does not mean that it can foreclose the insured's claim against a third person without a disclosure of its desire to settle and the effect of the settlement upon the insured's rights and interests. After the disclosure, an insured is entitled to a reasonable opportunity to reflect on the consequences to determine whether to consent.

■ The insurer acts as a fiduciary for the insured and must in good faith be responsive to the insured's interest. It cannot deny an insured any rights unless specifically expressed in the policy. *Lieberman v. Employers Ins. of Wausau,* 84 N.J. 325, 419 A.2d 417 (1980) held that when an insurance policy calls for the consent of the insured as a condition of settlement but is silent as to revocability of that consent, the insured can revoke consent in the absence of a contrary provision in the policy.

An insurer who violates a fiduciary duty to an insured, one which inures to the benefit of a third person, should not operate to the detriment of the insured. Aetna must not deal privately with Yates to secure a settlement satisfactory to both of them without the knowledge and consent of Landin, and then allow Yates to deprive Landin of her rights against Yates. Neither equity nor the law looks with favor upon the deprivation of Landin's rights by the intrusion of principles such as accord and satisfaction or estoppel because Yates was not dealing with Landin.

Yates, to avoid litigation with Landin, relies upon an agency theory wherein the insured is principal and the insurer is the agent. Under the policy provision that authorized the insurer to make such settlement as it deemed appropriate, and the insurer as agent effects a settlement with a third party without the knowledge, consent or satisfaction of the insured, the insured is bound by the settlement and cannot sue the third party. *Aetna Casualty & Surety Co. v. Brooks,* 218 Ga. 593, 129 S.E.2d 798 (1963); *Long v. Union Indemnity Co.,* 277 Mass. 428, 178 N.E. 737 (1931), 79 A.L.R. 1116 (1932). In the Georgia case, the court suggested that the legislature could abolish its rule. The Georgia legislature did. *Long* held that the interest of the insurance company came first.

*Long* has been interpreted in a fashion that places it within the "consent" rule. *Wieding v. Krisch,* 271 S.W.2d 458 (Tex.Civ. App.1954); *Ross v. Stricker,* 85 Ohio App. 56, 88 N.E.2d 80, 83 (1949), rev'd on other grounds, 153 Ohio St. 153, 91 N.E.2d 18 (1950) said:

> The insured having consented or acquiesced in the settlement was, of course, bound by it and could not, as the court held thereafter, maintain an action against the third person.

If not placed under the "consent" rule, Keeton said that

> [I]nsofar as this opinion indicates that the company's privilege extends even to causing the insured's reciprocal claim to be barred, it is a minority view . . . . [Id. 3.]

See *City of Chattanooga v. Ballew,* 49 Tenn. App. 310, 354 S.W.2d 806 (1961); *Daniel v. Adorno,* 107 A.2d 700 (D.C.App.1954). North Carolina found that *Long* stands alone, probably because the Massachusetts Legislature modified the rule. *Lampley v. Bell,* 250 N.C. 713, 110 S.E.2d 316 (1959).

*Long* has lost its impact as judicial authority on the agency theory. The Georgia and Massachusetts courts believed that it was within the province of the legislature, not the courts, to meet the need for reform

594

of a patently absurd or unjust judicially created rule of law. We do not.

Yates points to a federal district court case in which Landin sued Aetna. This issue was not raised in the district court and merits no consideration here.

Summary judgment granted Yates is reversed. On remand, the district court shall vacate and set aside the summary judgment and proceed toward trial. Yates shall pay the costs of this appeal.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.