**Leonard WOODSTOCK, Appellant (Plaintiff below),**

v.

**George EVANOFF, Jr. and Greg Evanoff, Appellees (Defendants below).**

**No. 4564.**

Supreme Court of Wyoming.

June 15, 1976.

James W. Owens, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, and Robert Patrick Dixon, senior law student, for appellant.

William S. Bon and Robert H. McCrary, Casper, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

## FACTS

Plaintiff-appellant, Leonard Woodstock, asked damages in a suit against defendant-appellee, George Evanoff, Jr., for injuries allegedly received when their vehicles col-

lided. The plaintiff was hauling produce under a lease with a freight carrier, Pirkle Refrigerator Freight Lines, who had liability coverage with Allstate, and which policy furnished liability protection for the plaintiff.

After the accident, Allstate, acting through its agent, entered into negotiations with defendant, Evanoff, to settle the claim of Evanoff against Woodstock. These negotiations were consummated with Allstate's payment to Evanoff of $5,100.00, who signed an instrument releasing Pirkle and Woodstock from any and all claims for liability that he might have against them.

The agent for Allstate sent Woodstock a release which would have released Evanoff from any claim for injuries which Woodstock might have against him. Woodstock refused to sign the release and he did not, at any time, enter into or consciously consent to Allstate's settlement with Evanoff. Woodstock contended that he was not at fault and that Evanoff's negligence caused the accident.

After the suit was filed against Evanoff, he moved to counterclaim and add his son, Greg Evanoff, as an additional party. This motion was granted—the son was added as a party and the counterclaim was filed. When the plaintiff received the counterclaim, he forwarded it to Allstate for defense purposes. In response to its obligation to defend all claims covered by Pirkle's policy, Allstate pled the release running from Evanoff to Woodstock and the court dismissed the counterclaim in *summary judgment proceedings.*

The defendant Evanoff filed a motion for summary judgment on the ground that the plaintiff Woodstock, by allowing the insurance company to plead the release as a defense to the counterclaim, had ratified the release in a manner which would bar Woodstock from asserting his claim against Evanoff. In response to this motion, the court granted the summary judgment and the plaintiff's complaint was dismissed.

It is from the order granting defendant's motion for summary judgment that appeal to this court is taken.

## CONTENTION OF THE PARTIES

It is contended by the plaintiff-appellant:

(1) There was no ratification of the release by the plaintiff when he tendered the counterclaim to his insurance carrier for defense and when the carrier moved for and was granted summary judgment on the counterclaim on the strength of the release signed by the defendant.

(2) The plaintiff further contends that even if there was ratification of the release —it only does what it purports to do, namely, settle all claims the defendant had against the plaintiff and Pirkle while in no way affecting or jeopardizing the right of action which the plaintiff may have had against the defendant.

It is contended by the defendant-appellee:

(1) There was a ratification of the release when it was set up as a bar to the counterclaim—and the release—being ratified was in settlement—not only of defendant's right of action against the plaintiff—but was also in full settlement of the plaintiff's right of action against the defendant.

## HOLDING

This case presents a question of first impression in Wyoming and our rather searching inquiry leads us to agree with the position of the plaintiff-appellant and reverse the trial court for the reason that the great majority and, we think, better reasoned rule is diametrically opposed to the trial court's holding. The cases cited by appellee represent a minority point of view.

It is said in 7 Am.Jur.2d, Automobile Insurance § 153, pp. 480–481:

"§ 153. Conclusiveness and effect of settlement by insurer.

"An automobile liability insurer's settlement of a claim against the insured, made

without the insured's consent or against his protests of nonliability, and not thereafter ratified by him, will not ordinarily bar an action by the insured against the person receiving the settlement, on a claim arising out of the same state of facts. Even where the settlement was made after the claim against the insured had been formulated in an action, and resulted in a dismissal of such action, it has generally, although not universally, been held that the insured's claim is not barred, and this is so regardless of the principles of res judicata or estoppel, and regardless of whether the insured who wishes to recover from the person receiving the settlement is the named insured or an additional insured." [Footnote numbers omitted—citing cases]

The rule is again stated in 32 A.L.R.2d 937, at page 938, in an article entitled "Liability insurer's settlement of claim against insured as bar to insured's tort action against person receiving settlement," where it is said:

"The courts which have considered the question are agreed that a liability insurer's settlement of a claim against the insured, made without the insured's consent or against his protests of nonliability, and not thereafter ratified by him, will not ordinarily bar an action by the insured against the person receiving the settlement, on a claim arising out of the same state of facts." (Citing cases [1])

Speaking of the above rule, Keeton, in his Basic Text on Insurance Law, "Reciprocal Claims," § 7.10(a), page 529, says:

". . . It would seem both fairer and more efficient to treat the settlement between one person's insurance company and a second person as having no effect on the first person's interests. The preferable rule, then, is that one's reciprocal claim is not barred by a settlement between his liability insurance company and the other party to an accident. This rule is supported by the great weight of authority." [Citing cases—footnote numbers omitted]

In his article on "Liability Insurance and Reciprocal Claims From a Single Accident," Keeton, writing in Southwestern Law Journal, Vol. 10 (1956), speaks to the equities involving—not only the insured plaintiff but also the third-party defendant.

Of the plaintiff's interest, the author says, at page 6 of his article:

"The better view is that the insurance policy does not grant to the company the privilege of barring the insured's reciprocal claim by an agreement which the insured has not otherwise joined in, ratified, or authorized. The purpose of the policy clause granting to the company the privilege of making such settlement as it deems expedient is to give the company control over the handling of the claim *against* the insured. Nowhere in the policy is the reciprocal claim referred to expressly. The error of inferring that the policy grants to the company the privilege of barring the insured's reciprocal claim is apparent when the consequences of such construction are envisioned. Suppose that C asserts a claim for

---

1. Cases cited are:
   "United States.—For federal cases applying state law, see the particular state headings infra.
   "Arkansas.—*Fikes v. Johnson* (1952) 220 Ark 448, 248 SW2d 362, 32 ALR2d 934.
   "Georgia.—*Foremost Dairies v. Campbell Coal Co.* (1938) 57 Ga App 500, 196 SE 279; *U.S.A.C. Transport, Inc. v. Corley* (1953, CA5th Ga) 202 F2d 8.
   "Illinois.—*Last v. Brams* (1925) 238 Ill App 82.
   "Missouri.—*Burnham v. Williams* (1917) 198 Mo App 18, 194 SW 751.

"New Jersey.—*De Carlucci v. Brasley* (1951) 16 NJ Super 48, 83 A2d 823; *Isaacson v. Boswell* (1952) 18 NJ Super 95, 86 A2d 695.
   "Pennsylvania.—*Barron v. Smith* (1949) 33 Erie Co LJ 154.
   "Tennessee.—*Jetton v. Polk* (1933) 17 Tenn App 395, 68 SW2d 127; *American Trust & Banking Co. v. Parsons* (1937) 21 Tenn App 202, 108 SW2d 187.
   "Virginia.—*See Owen v. Dixon* (1934) 162 Va 601, 175 SE 41."
See also 32 A.L.R.2d Later Case Service 937–940, pp. 21–24.

$250 damages against D, the insured, and D makes a reciprocal claim for $100,000 damages which he has suffered. May the company release D's $100,000 claim in consideration of C's release of his $250 claim, with the result that the cost of settlement to the company is nothing and the cost to the insured is the value of his $100,000 claim? If so, the insured in these circumstances would be in much worse position with liability insurance than without it. Furthermore, if C also had liability insurance, recognition that a liability insurance company has a privilege to release its insured's claim would enable the two insurance companies (or the one company, if both motorists were insured in the same company) to cancel out the reciprocal claims of C and D, leaving each of them with no recovery though at least one may have had an otherwise valuable claim. Whether the matter be argued as one of 'plain meaning of the language of the contract,' as one of 'giving effect to the intention of the parties,' or as one of judicial interpolation to fill a gap in the policy terms, the answer should be the stame: As between the company and the insured, the company is not granted the privilege of releasing the insured's reciprocal claim when making such settlement 'as it deems expedient' of the claim against the insured."

In consideration of the interests of the third-party defendant, Keeton observes, at page 7 of his article:

"A negative answer should be given also to the question whether, as between the insured and the third party who settled with the company, the settlement bars the insured's reciprocal claim. This question differs from the preceding one in that here the interests of the third party must be considered. If, however, he is not misled as to whether or not the company has the privilege of barring the insured's reciprocal claim, due protection of the interests of such third party does not re-

quire recognition of power in the company any broader than its privilege . . ."

The court said in *Fikes v. Johnson,* 220 Ark. 448, 248 S.W.2d 362, 364, 32 A.L.R.2d 934:

"After investigating the accident Johnson's insurer paid Fikes for his property damage and took a release discharging Johnson from further liability. It is insisted that this settlement is a bar to Johnson's suit. The parties stipulated, however, that the settlement was made by the insurer without Johnson's knowledge or consent. Although the insurance policy requires the company to defend suits against Johnson and empowers it to settle such cases, the policy does not authorize the insurer to settle or release the insured's claims against a third person. Where the insurer settles a claim against the insured over the latter's protest that he was not at fault, the insured may still maintain his action against the tortfeasor. *Burnham v. Williams,* 198 Mo. App. 18, 194 S.W. 751; *Jetton v. Polk,* 17 Tenn.App. 395, 68 S.W.2d 127. The reason is that the insured should not be bound by an agreement to which he did not assent, and the principle applies here."

The defendant argues, however, that the plaintiff has ratified the release by submitting the counterclaim to his carrier and asserting it as a bar in a summary judgment proceeding.

We do not agree. The defendant has received $5,100 for his claim against the plaintiff. There is no mention made in the release that, as part of the consideration for the signing, the release would serve to protect the defendant from the plaintiff's right of action. Further, the plaintiff did nothing to forfeit his right to have the insurance company defend the counterclaim. Both the plaintiff and the company had an absolute right to assert the release as a bar to the counterclaim of the defendant be-

cause the defendant had been paid for all purported damages arising out of his claim against plaintiff. The defendant cannot recover these damages twice!

The case of *Berlant v. McAllister*, 25 Utah 2d 237, 480 P.2d 126, 127 (1971), is uniquely similar to the matter at Bar. The Utah court said:

"The attorney for the carrier has no authority to settle any claim of the insured, and if, in order to effect a settlement of the claim against the insured, he must make a mutual settlement of the claims of all parties, he must secure the consent of the insured to make it binding in the absence of some principle of estoppel in pais.

"The elements of estoppel in pais are set out in 28 Am.Jur.2d, Estoppel, Section 35, as follows:

"['] * * * (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position of status of the party claiming the estoppel, to his injury, detriment, or prejudice. [']

"We can see no estoppel against this plaintiff. He was not a party to the settlement, although it naturally benefited him. It was a settlement only of the claims of the administrator of the estates of the Mowers and specifically recited that it was without prejudice to the rights of the plaintiff Berlant."

In the Utah case, supra, a counterclaim was filed after the release was executed and the court held the release to be a bar to the counterclaim, but the assertion of the release did not constitute a ratification by the plaintiff. The court reasoned that the defendant could not counterclaim because

it had been paid for the claim against the plaintiff, but this did not mean that the reliance upon the release to defeat the counterclaim amounted to ratification, nor did it mean that the defendant could not defeat the plaintiff's claim by proof of contributory negligence. By the same reasoning, the defendant could, of course, defend against the plaintiff's proof of defendant's negligence through an affirmative showing of mitigating negligence in a comparative negligence state.

The *Berlant* court, supra, referred to *Kirtley v. Irey*, Mo., 375 S.W.2d 129 (1964), and said, at 480 P.2d 128:

"The case of *Kirtley v. Irey* is similar to the one before us now. Headnote 6 states the holding:

"['] Act of plaintiffs' insurer in settling counterclaim of defendant, in taking general release from defendant, and in entering into compromise and settlement did not estop plaintiffs from further prosecution of action.[']"

The *Berlant* opinion concluded:

"The defendant claims ratification on the part of plaintiff in that the lawyer for the insurance company set forth the settlement as a defense to the counterclaim. We do not think there is anything in that defense to defeat plaintiff's claim, as the only thing which could be ratified by anybody was the settlement of *defendant's claim* against plaintiff for $5150 cash." [Emphasis in text copied]

■ ■ There is no sound reason to hold the plaintiff's claim to have been defeated even if he had in fact ratified the release of defendant's claim against him.

In *Brazell Brothers Contractors v. Hill*, 245 S.C. 69, 138 S.E.2d 835, 838 (1964), it was said by the court:

"The release here evidences a bargain of the second class, the relinquishment of

a claim by one party in consideration of a payment by the other. With an action for damages pending against him in which he had filed a counterclaim, Hill simply released his claim for damages without exacting in return an acquittal from the claim asserted against him. The ratification of the compromise and settlement by the Brazells cannot raise a promise on their part to forego something which the carrier did not renounce for them. In short, there was no attempted compromise and settlement of the Brazells' claim by the carrier to which they could be bound by ratification."

With reference to the quote from *Brazell,* appellant says:

".  .  . In other words, even if Woodstock had ratified the agreement in question through his reply, it could have no effect on his claim since the release itself made no attempt to affect that claim."

We agree with this observation—assuming there is no proof of the insurance company's misleading the third party. In this instance, there was no such showing.

We hold, therefore, that under the facts presented by this appeal, Woodstock, plaintiff-appellant, did not ratify the release executed in his behalf by the defendant-appellee, Evanoff, at the behest of plaintiff's liability carrier—either by silence or by asserting the release as a defense to the counterclaim—in such a fashion as would serve to bar Woodstock's claim against Evanoff. Further, in such matters generally, such a release, even where ratified, may not serve to deprive the plaintiff of his right of action against the defendant, except and unless the forfeiture of the right of action is demonstrated by oral agreement or through the terms of the release itself and execution thereof by the plaintiff.

Reversed and remanded to the lower court for proceedings not inconsistent with this opinion.